NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1082

COMMONWEALTH

vs.

DWIGHT LANDRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Dwight Landry, was convicted of carrying a firearm without a license.[1] On appeal, he claims that (1) the judge failed to instruct the jury that the Commonwealth must prove that he lacked a license to carry a firearm, a claim the Commonwealth concedes, and (2) the evidence was insufficient. He also raises a number of constitutional claims. We vacate the judgment and remand the matter to the District Court to allow the Commonwealth to retry the defendant if it so chooses.

---

[1] The jury found the defendant not guilty of carrying a loaded firearm without a license.

Background.  The jury could have found the following facts. On July 14, 2019, at approximately 1 P.M., Townsend police officer Christopher Low stopped the defendant for speeding.  Low learned that the defendant had an outstanding default warrant and arrested him.  A search incident to arrest yielded a necklace, wallet, jewelry, and cell phone.  During booking, the defendant said that he was wearing "an antique revolver from his grandfather" around his neck.  He said that he "just wanted to make [the officers] aware of [the revolver] so that [they] could properly take care of it."  Low recovered a "Derringer-type firearm," with a pearlescent white handle, "suspended from a necklace in [a] small, leather holster that was around [the defendant's] neck."  Low described the revolver as a "Derringer-type pistol" based on its size, shape, "stubby" grip, and "smaller" barrel.  Inside the revolver, there was live ammunition and one spent shall casing, which Sergeant George Reidy[2] removed.

A State police ballistician test fired the revolver using one of the live rounds of ammunition recovered from the cylinder and concluded that it was "capable of discharging a shot."  He noted that the revolver was a North American Arms brand .22

_____

[2] At the time of the arrest, Reidy was a patrol officer.

2

caliber Magnum mini revolver, and that it met the legal definition of a firearm.

Discussion. 1. Jury instructions. Here, the Commonwealth agrees with the defendant's claim that the judge did not instruct the jury that the Commonwealth must prove that he did not have a license to carry a firearm. And, the Commonwealth did not present any evidence that the defendant was in fact unlicensed. "[W]e therefore set aside [the] verdict without further discussion and remand for further proceedings." Commonwealth vs. Noguera, Supreme Judicial Ct., No. SJC-13045, slip op. at 3 (Sept. 24, 2025), citing Commonwealth v. Guardado, 493 Mass. 1, 2-3 (2023), cert. denied, 144 S. Ct. 2683 (2024).

2. Sufficiency of evidence. The defendant next argues that the evidence was insufficient to prove that he knowingly possessed a firearm. He contends that the revolver "was not a conventional firearm with obvious dangers," and that the Commonwealth was thus required to prove that he knew it met the legal definition of a firearm. He claims that it was "a small, decorative ornament used as jewelry" rather than a "conventional firearm." We are not persuaded. When reviewing a claim of insufficient evidence, we view the evidence in the light most favorable to the Commonwealth and determine whether it, together with any inferences permissibly drawn therefrom, is sufficient to permit the jury to find each essential element of the crime

3

charged beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). To prove that a defendant knowingly possessed a firearm, "the Commonwealth must prove the defendant knew that the weapon was a firearm 'within the generally accepted meaning of that term.'" Commonwealth v. Marrero, 484 Mass. 341, 344 (2020), quoting Commonwealth v. Sampson, 383 Mass. 750, 762 (1981). "A firearm is defined as 'a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than [sixteen] inches or [eighteen] inches in the case of a shotgun.'" Commonwealth v. Watkins, 98 Mass. App. Ct. 419, 421-422 (2020), quoting G. L. c. 140, § 121. "[W]here 'a conventional firearm with its obvious dangers is involved, the Commonwealth need not prove that a defendant knows the exact capabilities or characteristics of the gun which make it subject to regulation.'" Watkins, supra at 423, quoting Commonwealth v. Papa, 17 Mass. App. Ct. 987, 987-988 (1984).

Here, there was ample evidence that the revolver was a conventional firearm with obvious dangers, and that the defendant knowingly possessed it. The revolver was a .22 Magnum caliber mini revolver manufactured by North American Arms. Its appearance was consistent with that of a small firearm, having a barrel, grip, handle, cylinder, hammer, and trigger. Police

4

witnesses described it as a "firearm," "weapon," "pistol," "revolver," "mini revolver," and "Derringer." Further, the revolver was loaded with four live rounds of ammunition and contained one spent casing. Reidy had to make it "safe" at the police station by removing the live ammunition. The ballistician explained how the revolver operated, including that it discharged a bullet when fired, and thus met the legal definition of a firearm. In addition, the defendant told officers during booking that he was carrying "an antique revolver from his grandfather" around his neck.[3] In the light most favorable to the Commonwealth, the jury could reasonably conclude that the revolver was "a firearm 'within the generally accepted meaning of that term'" (citation omitted), Marrero, 484 Mass. at 344, as well as "a conventional firearm with its obvious dangers" (citation omitted). Watkins, 98 Mass. App. Ct. at 423.

3. Constitutional claims. The defendant raises several constitutional claims, many of which were not raised or preserved in the District Court.[4] Generally, "[w]e do not reach

---

[3] Defense counsel conceded at oral argument that the firearm is not an antique subject to the licensure exception under G. L. c. 140, § 121.

[4] Specifically, the defendant claims that (1) the Supreme Judicial Court "redefin[ed]" G. L. c. 269, § 10 (a), and thereby exceeded the scope of the judicial power; (2) § 10 (a) violates the due process clause; (3) the mandatory minimum sentence set

constitutionally based issues when there is a statutory or other nonconstitutional basis on which the case can be decided." Bynum v. Commonwealth, 429 Mass. 705, 710 (1999).  We also "generally decline to consider constitutional issues for the first time on appeal in order to avoid an unnecessary constitutional decision."  Commonwealth v. Castro, 99 Mass. App. Ct. 502, 511-512 (2021), quoting Commonwealth v. Guzman, 469 Mass. 492, 500 (2014).  Considering these principles, and our conclusion that the defendant is entitled to a new trial, we decline to address the defendant's constitutional claims.

Conclusion.  The judgment is vacated, the verdict set aside, and the matter remanded to the District Court to allow the Commonwealth to retry the defendant if it so chooses.

So ordered.

By the Court (Blake, C.J., Desmond & Singh, JJ.[5]),

Clerk

Entered:  October 2, 2025.

---

forth in  § 10 (a) is cruel and unusual punishment; and (4) § 10 (a) violates the Second Amendment to the United States Constitution.

[5] The panelists are listed in order of seniority.